UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

CIVIL ACTION NO. 08-CV-294-JMH

EDWARD CLYDE ALLEN,                                      PETITIONER,

VS:                    <u>MEMORANDUM OPINION AND ORDER</u>

STEPHEN M. DEWALT,                                      RESPONDENT.

**** **** **** **** ****

This matter is ripe for decision on the *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by Edward Clyde Allen, an inmate at the Federal Medical Center, in Lexington, Kentucky.

**BACKGROUND**

On July 1, 2008, Petitioner initiated this action challenging the procedures and result in a Bureau of Prisons ("BOP") disciplinary proceeding which ended with his conviction and sanctions, including the loss of good contact time ("GCT") and the loss of his job in the BOP's UNICOR industry. He was unsuccessful in his attempts to have the conviction and sanctions reversed on appeal to the BOP. He then filed the instant action and upon screening the Petition, the Court directed the Warden to file a Response. He has now done so.

In the Petition, Allen described himself as a 65-year-old man, who underwent a circumcision in May of 2007, and he claimed that since that surgery, he has "a hard time urinating." On October 10, 2007, Allen and several other inmates were directed to provide urine samples for drug testing, but, the Petitioner alleges, he was unable to produce one because of urinary retention, a residual effect from the surgery. After the consumption of two glasses of water and the passage of 1 hour and 55 minutes without producing the urine specimen, a corrections officer charged him with the offense of refusing to provide a sample, a level Code 110 offense in a category of prison offenses authorizing the most severe penalties.[1]

According to the Petitioner, he never refused to give a sample but could not give it. Further, he was entitled to up to 2 hours to produce the urine, and a longer period if authorized for medical reasons, but he was not given this extra time, consistent with the BOP's applicable program statement. Attached to the instant Petition were several documentary exhibits, including the original and amended report of the Disciplinary Hearing Officer ("DHO").

These exhibits reveal that at the DHO hearing on October 25, 2007, the Petitioner asked for no witnesses or documents in his

---

[1] The various levels of Bureau of Prisons ("BOP") offenses are listed in 28 C. F. R. § 541.13, Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

behalf and presented none.  In fact, according to the DHO report, Allen admitted that he "failed to perform a bodily function in a certain amount of time, but I have problems" since the circumcision.  Although Petitioner insisted that he did not refuse to produce the specimen, the DHO found to the contrary, relying on the incident report, investigation notes, and a Physician Assistant's ("PA") report that there was no reason in his medical records for Allen's being unable to produce urine on demand.

"Therefore, the DHO finds the greater weight of the above listed evidence supports you committed the prohibited act of refusing to provide a urine sample, Code 110."  Allen was sanctioned with a 30-day stay in detention, a year's loss of visiting privileges except for family, and the loss of 41 days of good conduct time ("GCT").

After the conviction and his stay in detention, the Petitioner proceeded to obtain two documentary exhibits to support his defense and he has attached them herein.  One is a urologist's November 23, 2007, urine retention diagnosis with the advice, "May catheterize as needed to get specimen."  The second exhibit is a January 14, 2008, Memorandum from Dr. Holbrook, the prison doctor, who has written, "Ed Allen has medical conditions that prevent him from urinating on a regular and frequent basis."  He, too, sets out a process for obtaining a specimen via a catheter procedure, to be conducted by medical staff.

Allen challenged the conviction through the BOP appeal process, denying that he received  the extra time and water and complaining that a PA on duty was consulted, instead of his usual doctor.  Upon exhaustion of the appeal process, Allen submitted the Section 2241 Petition herein, asking that the Court reverse the conviction, reverse the sanctions, and restore both his 41 days of GCT and his UNICOR job with back pay and paygrade.

**RESPONSE**

In response to the averments in the instant Petition, the Respondent attaches two declarations, the first being that of Robert Williams, the on-duty PA who was contacted by the DHO.  He declares that after some initial tenderness, the Petitioner's circumcision had healed normally; further, during the five (5) months since the surgery, Allen had ten (10) medical appointments but made no complaint of urinary problems at any time.

According to this PA, it was three (3) days *after* the DHO hearing that Petitioner asked for Dr. Holbrook to authorize the catheter procedure in such circumstances.  And another month passed before Allen reported having problems voiding and another PA requested the specialist's consult.  Only after the urologist's examination was Allen "diagnosed with urinary slowing due to prostatism, enlarged prostate or parauresis."  The PA reports that Petitioner has been taking a drug to help with that problem since December of 2007.

4

The second Declarant is the DHO, Timothy Smart, who provides all of the documents generated by the discipline process and relates the dates on which the various stages in the usual procedures were conducted.  As to the ultimate decision, he also explains that he relied on the Petitioner's admission that he did not produce the required sample, the incident report by Officer Morgan, Officer Trimble's investigation, a conversation with the PA on duty as to the contents of Allen's medical records, and Petitioner's failure to make a urinary complaint to medical staff until after the DHO hearing was conducted and the sanctions were imposed.

The Warden's legal position is that Allen received all of the process due him, and the Respondent then traces the several stages in the process, as described in the BOP regulations case law and cases from the Supreme Court of the United States.  *See* Title 28 C.F.R. § 541.13; *Wolff v. McDonald*, 418 U.S. 539 (1974); and *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985).

## DISCUSSION

The Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken when a prisoner violates, or attempts to violate, institutional rules.

5

It is true that the first step requires the filing of an incident report and an official's investigation pursuant to 28 C.F.R. § 541.14.  Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. 28 C.F.R. § 541.15.  As the instant Petitioner's charge was in the severest category, the matter had to be referred to a DHO hearing.

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and 3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974).

The instant record reflects that the BOP complied with the necessary procedural requirements of *Wolff*.  The instant Petitioner had more than 24 hours notice of the charges against him.  In fact,

6

he had two weeks notice, from receipt of the charges and the investigation the next day, before the DHO hearing was held.  He chose to go to the hearing without requesting medical records, any other documentation, or a PA or other witness in his behalf.

The required "written statement by the factfinder as to evidence relied on and reasons for the disciplinary action" in this case was the 3-page DHO report, wherein the officer summarized the evidence against Allen (incident report, investigatory report, the DHO's conversation with a PA, and the admission of the Petitioner that he had drunk two glasses of water) – and the lack of evidence (of a medical condition) – at the time of the hearing.

As to these reasons for the decision, the DHO wrote that he found "the greater weight of the above listed evidence supports you committed the prohibited act of refusing to provide a urine sample, Code 110."  Additionally, at the end of the report, he similarly justified the reasons for the severe sanctions which he imposed, including providing a safe environment for workers and prisoners, holding the inmate accountable, and correcting his behavior in the future.

After due consideration, the Court finds that the BOP adhered to the procedural due process requirements of *Wolff* and turns its attention to another aspect of Petitioner's due process claim. Under *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985), a conviction cannot be upheld as consistent with due process unless

there is "some evidence" to support the disciplinary decision. "Some evidence," as its name suggests, is a lenient standard, however. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000).

Also, the district court's role in reviewing a disciplinary conviction is extremely limited. The Court has no authority under the guise of due process to review a disciplinary committee's resolution of factual disputes; a district court merely ensures that a disciplinary decision is not arbitrary and does have evidentiary support. *Superintendent,* 472 U.S. at 457. Even meager proof will suffice. *Webb*, 224 F.3d at 652.

In the instant case, there is clearly "some evidence" of Allen's guilt. *See Wagner v. Seely*, 915 F.2d 1575 (7th Cir. 1990) (unpublished), *cert. denied* 501 U.S. 1219 (1991). He did not deny that he failed to provide the sample, there was documentary evidence written by two different officers, a PA reviewed Allen's medical records, and there was an absence of evidence to support Petitioner's purported defense. There may be an issue of fact as to whether Allen was given 1 hr and 55 minutes, or two hours, or 2 ½ hours to provide the sample, but it is not the province of this Court to resolve such a conflict.

As aforestated, a federal court's review of a decision of a prison disciplinary decision does not involve a redetermination of an inmate's innocence or guilt; nor is the court required to made

8

an independent assessment of witnesses' credibility. *Superintendent*, 472 U.S. at 455. Moreover, the credibility determinations of the hearing officers cannot be disturbed on appeal. *Wagner*, 915 F.2d at 1576. The Court may not re-visit the evidence presented.

This Court finds that the instant Petitioner's disciplinary conviction was supported by "some" evidence, and so his due process rights were not violated with regard to the sufficiency of the evidence. Further, in the face of the evidence described *supra*, it is apparent that the DHO's actions were not arbitrary or capricious, and therefore, to the extent Petitioner's claim has a substantive due process component, it also fails. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1951)).

Having found that the challenged disciplinary conviction herein was not obtained in violation of the instant Petitioner's Constitutional rights, the Court will deny his Petition for Writ of Habeas Corpus and dismiss his cause of action.

### CONCLUSION

Accordingly, Court being advised, **IT IS ORDERED** as follows:

(1) Edward Clyde Allen's Petition for Writ of Habeas Corpus is **DENIED**; and

(2) this action will be **DISMISSED**, *sua sponte*, from the docket of the Court; and Judgment shall be entered

9

contemporaneously with this Memorandum Opinion and Order in favor
of the Respondent.

   This the 16th day of December, 2008.



Signed By:

**_Joseph M. Hood_**

**Senior U.S. District Judge**